UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAY DEE GIBSON,<br><br>           Plaintiff,<br><br>     v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>           Defendant. | No.  2:19-cv-01860 CKD (SS)<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born in 1965, applied on February 20, 2018 for SSI, alleging disability beginning November 21, 2004. Administrative Transcript ("AT") 15. Plaintiff alleged he was unable to work due to carpal tunnel syndrome, tendonitis, elbow and knee problems, high blood pressure, diabetes, depression, and anxiety. AT 280. In a decision dated May 9, 2019, the ALJ determined

that plaintiff was not disabled.[1]  AT 15-27.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant has not engaged in substantial gainful activity since February 20, 2018, the application date.
>
> 2. The claimant has the following severe impairments: left shoulder osteoarthritis, history of bilateral carpal tunnel syndrome, chronic pain syndrome, chronic obstructive pulmonary disease, major depressive disorder, and anxiety disorder.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

      light work, except frequently stoop and balance but occasionally kneel, crouch, climb stairs and should avoid crawling, climbing ladders, heights, and moving machinery. The claimant could occasionally perform overhead reaching, frequently handle and finger bilaterally. Mentally, the claimant could understand, remember, and carry out simple instructions, perform simple routine tasks, and could occasionally tolerate changes in the work setting.

      5. The claimant has no past relevant work.

      6. The claimant was born on XX/XX/1965 and was 52 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed.

      7. The claimant has a limited education and is able to communicate in English.

      8. Transferability of job skills is not an issue in this case because the claimant does not have past relevant work.

      9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

      10. The claimant has not been under a disability, as defined in the Social Security Act, since February 20, 2018, the date the application was filed.

AT 17-26.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) The ALJ erroneously assessed the mental health opinion evidence; and (2) the ALJ erroneously evaluated plaintiff's subjective complaints.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving

ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Mental Health Opinions

The ALJ relied on one of three doctors' opinions to support the mental RFC: "Mentally, the claimant could understand, remember, and carry out simple instructions, perform simple routine tasks, and could occasionally tolerate changes in the work setting." AT 19. Plaintiff asserts that the ALJ erred in evaluating these opinions, such that the mental RFC is not supported by substantial evidence.

1. Legal Standard for Applications Filed On or After March 27, 2017

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014); see also Marsh v. Colvin, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them").

The Ninth Circuit previously has required that, in order to reject an uncontradicted opinion of a treating or examining physician, the ALJ must provide "clear and convincing reasons

that are supported by substantial evidence." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017); Ghanim v. Colvin, 763 F.3d 1154, 1160-61 (9th Cir. 2014).  Alternatively, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Trevizo, 871 F.3d at 675.

However, for disability applications filed on or after March 27, 2017, the Commissioner revised the rules for the evaluation of medical evidence at the administrative level.  See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg 5844-01 (Jan. 18, 2017). Because Plaintiff filed his SSI application on February 20, 2018, it is subject to the new rules for the evaluation of medical evidence.

The revised rules provide that adjudicators for the Social Security Administration, including ALJs, evaluate medical opinions according to the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements.  20 C.F.R. § 416.920c(c)(1)-(5).  The most important of these factors are supportability and consistency.  20 C.F.R. § 416.920c(b)(2).  Supportability is the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations.  20 C.F.R. § 416.920c(c)(1).  Consistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources, including the claimants themselves.  20 C.F.R. §§ 416.920c(c)(2), 416.902(j)(1).  The ALJ will articulate how she considered the most important factors of supportability and consistency, but an explanation for the remaining factors is not required except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 416.920c(b).  When a single medical source provides multiple opinions and findings, the ALJ must articulate how they were considered in a single analysis. 20 C.F.R. § 416.920c(b)(1).

2. <u>Analysis</u>

Here, the ALJ found that, during plaintiff's alleged period of disability, "the medical records . . . showed that his mental condition was well controlled."  AT 22.

>From September 2018 through October 2018, his mental status examination was within normal limit [sic] with normal mood and appropriate responses; he was alert and oriented as to person, place, and time.[2]  In December 2018, his mental status examination revealed he was alert and oriented to person, place and time.[3]

>. . .

>In January 2019, . . . [his] mental status examination revealed no agitation, full affect, intact judgment/insight, and some anxiety.[4]  In March 2019, his examination was within normal limits.[5]  Diagnosis was unspecified anxiety disorder.[6]

AT 22.

The ALJ next summarized the medical opinions on mental health, beginning with examining physician Dr. Sunde.

>[In April 2018, p]sychologist Dr. Chester Sunde observed and noted that the claimant's concentration was fair and his persistence and pace was good.  His mental status examination was within normal limits, except for depressed/anxious mood, distracted thoughts, impaired memory, low average knowledge, and was somewhat disheveled.  Diagnosis was major depression.

>. . .

>[P]sychological examiner Dr. Chester Sunde in April 2018 opined that the claimant could understand, remember, and complete simple instructions and the claimant's ability to interact appropriately with supervisors, coworkers, and the public, respond to changes in a normal workplace setting, and maintain persistence and pace in a normal workplace setting were moderately limited.

AT 22-23[7].

Turning to the state agency doctors' opinions, the ALJ wrote:

>Dr. D. Malone from the State agency determined [in April 2018] that the claimant could perform simple instructions, occasionally complete a normal workday and workweek and respond appropriately to changes in the work setting.[8]

>Dr. J. Collado from the State agency affirmed [in August 2018] Dr.

---

[2] Citing AT 404, 420, 424.
[3] Citing AT 398, 401.
[4] Citing AT 386, 420.
[5] Citing AT 426.
[6] Citing AT 427.
[7] Citing AT 368-371 (April 2018 opinion by Dr. Sunde).
[8] Citing AT 138-140 (April 2018 opinion by Dr. Malone).

> Malone's medical opinions but added that the claimant had moderate limitations maintaining appropriate social behavior.[9]

AT 23.

Weighing these opinions in light of the medical evidence, the ALJ wrote:

> The undersigned finds the medical opinions from Dr. Malone were more persuasive and consistent than the opinions from Dr. Sunde and Dr. Collado. Dr. Malone's opinions were consistent with the discussed treatment notes, which showed that the claimant could perform simple routine tasks and could occasionally tolerate changes in the work setting. However, the medical opinions from Dr. Sunde and Dr. Collado were not consistent with the treatment notes and showed that the claimant would have social interaction problems.

AT 25.

Plaintiff points out that, in fact, the non-examining opinions of Dr. Malone and Dr. Collado are the same. Both doctors described plaintiff as

> an independently functioning adult who indicates that his physical impairments/conditions are the primary issue. He reports capable of performing his ADLs [activities of daily living]. He is able to understand and remember (and carry out) at least simple instructions of 3 or more steps. He would make errors on detailed instructions when mentally preoccupied with his conditions.

AT 139 (Dr. Malone), 156 (Dr. Collado). Both doctors further opined:

> The claimant's symptoms of mental impairment are not so numerous, intense, or pervasive as to seriously limit his ability to perform work-related tasks in a work-setting [sic] that is not fast paced or that involves frequent changes of tasks or routines.

AT 139 (Dr. Malone), 157 (Dr. Collado). Based on the record evidence cited by the ALJ and the full agreement of another doctor, Dr. Malone's opinion meets the supportability and consistency requirements of the revised rules.

Next, plaintiff argues that the RFC did not account for opined limitations as to persistence and pace in a work setting. Both Dr. Malone and Dr. Collado opined that plaintiff was moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without

---

[9] Citing AT 156-158 (August 2018 opinion by Dr. Collado).

an unreasonable number and length of rest periods. AT 139 (Dr. Malone), 157 (Dr. Collado). Both physicians elaborated: "The claimant's symptoms of mental impairment are not so numerous, intense, or pervasive as to seriously limit his ability to perform work-related tasks in a work-setting that is not fast-paced or that involves frequent changes of tasks or routines." AT 139 (Dr. Malone), 157 (Dr. Collado).

Examining physician Dr. Sunde, whose opinion was discounted, found plaintiff moderately impaired in the ability to maintain persistence and pace in a normal workplace setting "due to impaired concentration, depressed mood, anergia and anhedonia, [and] negative ruminating thoughts." AT 371. This assessment is not necessarily inconsistent with the other two doctors' opinions; all three found moderate impairment in persistence and pace and the need for related limitations.

The mental RFC provided that plaintiff could "understand, remember, and carry out simple instructions, perform simple routine tasks, and could occasionally tolerate changes in work setting." AT 19. In Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008), the Ninth Circuit held that an RFC adequately captures restrictions related to concentration, persistence, or pace when the assessment is consistent with restrictions identified in the medical testimony. See also, e.g., Schmidt v. Colvin, No. 2:12-cv-00016 KJN, 2013 WL 5372845, at *17 (E.D. Cal. Sept. 25, 2013) ("'Moderate' mental limitations are not necessarily inconsistent with an RFC for 'simple' tasks, as long as such assessment is generally consistent with the concrete restrictions identified in the medical evidence."), citing Stubbs-Danielson, 539 F.3d at 1174. Here, the RFC limitations to "simple routine tasks" and "occasional" changes in the work setting are generally consistent with the persistence and pace restrictions identified in the medical evidence, and plaintiff has not shown reversible error on this basis.

Plaintiff next argues that the mental RFC does not account for plaintiff's social limitations. Both Dr. Malone and Dr. Collado opined that plaintiff was "not significantly limited" in the ability to interact appropriately with the general public, or the ability to ask simple questions or request assistance. Both found "no evidence of limitation" in the ability to accept instruction and respond appropriately to criticism from supervisors, or the ability to get along

8

with peers without distracting them or exhibiting behavioral extremes. AT 139-140 (Dr. Malone), 157 (Dr. Collado). Both physicians found plaintiff "moderately limited" in the ability to maintain socially appropriate behavior, explaining as follows:

> The claimant's appearance may be optimal, and he may be observed by others to be preoccupied and not socially responsive. However, there are no indications that he cannot interact with others in a socially appropriate manner, at least for limited contacts associated with work setting and related tasks.

AT 140 (Dr. Malone), 157 (Dr. Collado).

In his decision, the ALJ noted that Dr. Malone and Dr. Collado

> determined that the claimant had only mild limitations interacting with others. At the hearing, the claimant did not testify that he had problems interacting with others. Treatment notes did not show that he had abnormal or inappropriate behavior during his examinations.

AT 18. Though the RFC contains no social limitations, plaintiff has not shown reversible error on this basis.

### B. Credibility

Plaintiff argues that the ALJ erred in evaluating his subjective complaints, in which plaintiff alleged limitations from bilateral carpal tunnel syndrome, left elbow tendinitis with some nerve damage, left shoulder pain, chronic obstructive pulmonary disease, depression and anxiety. See AT 23. The ALJ found that plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AT 20.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

////

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ determined that plaintiff's statements about his physical symptoms were "inconsistent with the treatment notes that show his physical condition was well controlled," citing largely normal examinations and mild clinical findings. AT 21-22. Despite plaintiff's alleged knee problems, high blood pressure, and diabetes mellitus, "[t]here [is] no diagnostic testing in the record showing that he had any bilateral knee abnormalities," nor any evidence of diabetes mellitus or "out of control" hypertension. AT 24. The ALJ further noted that "no ongoing medical evidence in the records from a pain clinic," nor any evidence of chiropractic care, hospitalizations, physical therapy, a treating neurologist, or diagnostic testing showing that

he "still struggle[s] with bilateral carpal tunnel syndrome and left elbow nerve damage." AT 24.

However, the ALJ found that plaintiff's "allegations are partially supported by his use of prescription medications; he had at least three subacrominal injections in his left shoulder and there were some findings of left shoulder slight to limited range of motion . . . and mild left shoulder atrophy." AT 23; see AT 21 (noting 2018 injections for left shoulder pain). The ALJ also cited objective evidence that plaintiff had decreased sensation and gripping strength in his left hand in 2018. AT 24. The resulting physical RFC allowed for occasional reaching, handling, and fingering, and limited plaintiff to light work. AT 19.

"The medical records also showed that his mental condition was well controlled," the ALJ stated, citing normal mental status examinations in 2018 and 2019, and plaintiff's statement that "his primary issue dealing with his physical limitations[.]" AT 22. The ALJ noted plaintiff's statement that he could perform the activities of daily living without assistance, and further noted "no evidence of treatment in the record from mental health professionals, psychiatric hospitalizations, emergency room treatment, crisis center contacts, and no referrals to county mental health facilities." AT 25. "Thus," the ALJ concluded, "the claimant's allegations are not consistent with the treatment notes." AT 25.

Plaintiff presents various arguments as to why the ALJ's credibility analysis was flawed. None are persuasive. Because the ALJ used the proper process and provided proper reasons in determining credibility, the undersigned defers to the ALJ's discretion on this issue.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 11) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 14) is granted; and

3. Judgment is entered for the Commissioner.

Dated: January 6, 2021

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/gibson1860ssi.ckd